# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | | |
|---|---|---|
| CORY M. REUTER, | | |
| Plaintiff, | No. 19-CV-2053-LRR | |
| vs. | **ORDER** | |
| COMMISSIONER OF SOCIAL SECURITY, | | |
| Defendant. | | |

*I.*      *INTRODUCTION*..................................................................*1*

*II.*     *RELEVANT PROCEDURAL HISTORY*.............................................*1*

*III.*    *STANDARD OF REVIEW*............................................................*2*

      *A.*     *Review of Final Decision*.................................................*2*
      *B.*     *Review of Report and Recommendation*............................*3*

*IV.*    *OBJECTIONS*........................................................................*4*

      *A.*     *Dr. Cadaret's Opinions*.................................................*5*
      *B.*     *James Johnson's Opinions*............................................*7*
      *C.*     *Appointments Clause Challenge*.....................................*9*

*V.*      *CONCLUSION*......................................................................*10*

## I. INTRODUCTION

The matter before the court is Plaintiff Cory M. Reuter's Objections (docket no. 19) to United States Magistrate Judge Mark A. Roberts's Report and Recommendation (docket no. 18), which recommends that the court affirm Defendant Commissioner of Social Security's ("Commissioner") final decision to deny disability benefits to Reuter.

## II. RELEVANT PROCEDURAL HISTORY

On July 31, 2019, Reuter filed a Complaint (docket no. 4), seeking judicial review of the Commissioner's final decision denying his applications for Title II disability

insurance benefits and Title XVI supplemental security income ("SSI") benefits.  On October 25, 2019, the Commissioner filed an Answer (docket no. 8).  On January 28, 2020, Reuter filed the Plaintiff's Brief (docket no. 13).  On February 27, 2020, the Commissioner filed the Defendant's Brief (docket no. 15).  On March 6, 2020, Reuter filed a Reply (docket no. 16).  On March 9, 2020, the matter was referred to Judge Roberts for issuance of a report and recommendation.  On May 29, 2020, Judge Roberts issued the Report and Recommendation.  On June 12, 2020, Reuter filed the Objections.  On June 23, 2020, the Commissioner filed a Response (docket no. 20).  The matter is fully submitted and ready for decision.

### III.  STANDARD OF REVIEW

#### A.  Review of Final Decision

The Commissioner's final determination not to award disability insurance benefits is subject to judicial review.  *See* 42 U.S.C. § 405(g).  The court has the power to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."  *Id*.  The Commissioner's factual findings shall be conclusive "if supported by substantial evidence."  *Id*.  "The court 'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'"  *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)).  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  *Fentress v. Berryhill*, 854 F.3d 1016, 1019-20 (8th Cir. 2017) (quoting *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the [administrative law judge ("ALJ")], but [it] do[es] not re-weigh the evidence."  *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  The court considers "both evidence that detracts from the Commissioner's

decision, as well as evidence that supports it." *Fentress*, 854 F.3d at 1020; *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (providing that review of the Commissioner's decision "extends beyond examining the record to find substantial evidence in support of the [Commissioner's] decision" and noting that the court must also "consider evidence in the record that fairly detracts from that decision"). The Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)). The court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "An ALJ's decision is not outside the zone of choice simply because [the court] might have reached a different conclusion had [the court] been the initial finder of fact." *Id*. (quoting *Bradley*, 528 F.3d at 1115). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

### B. *Review of Report and Recommendation*

The standard of review to be applied by the court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of

those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party properly objects to a report and recommendation on a dispositive motion, a district court must review de novo the magistrate judge's recommendation). The Eighth Circuit has repeatedly held that it is reversible error for a district court to fail to conduct a de novo review of a magistrate judge's report and recommendation when such review is required. *See, e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). When a party fails to object to any portion of a magistrate judge's report and recommendation, he or she waives the right to de novo review. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). The United States Supreme Court has stated that "[t]here is no indication that Congress, in enacting § 636(b)(1)[ ], intended to require a district judge to review a magistrate's report to which no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 152 (1985). However, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under de novo or any other standard." *Id*. at 154.

### IV. OBJECTIONS

In the Objections, Reuter argues that: (1) Judge Roberts erred in finding that the ALJ properly addressed the opinions of Dr. Cadaret, a treating cardiologist; (2) Judge Roberts erred in finding that the ALJ properly weighed the opinions of James Johnson, an

4

examining medical source;[1] and (3) Judge Roberts erred in determining that the ALJ was properly appointed to hear Reuter's case. *See generally* Objections at 2-7. After conducting a de novo review of the objected-to portions of the Report and Recommendation and the Administrative Record ("AR") (docket nos. 9-1 through 9-14), the court shall overrule the Objections.

### A. *Dr. Cadaret's Opinions*

Reuter objects to Judge Roberts's finding that the ALJ properly evaluated Dr. Cadaret's opinions and that the ALJ did not err by failing to include certain limitations opined by Dr. Cadaret in Reuter's residual functional capacity ("RFC"). *See* Objections at 1-2. Citing *Gann v. Berryhill*, 864 F.3d 947, 952-53 (8th Cir. 2017), Reuter argues that remand is compelled "because the ALJ assigned significant weight to the opinions of Dr. Cadaret and did not explain why particular limitations provided by Dr. Cadaret were not accounted for in Reuter's . . . [RFC] determination." *Id*. at 2. Reuter complains that the Report and Recommendation incorrectly "concluded that Dr. Cadaret's opinions relating to being off task five percent of a workday and being absent at least once per month must have related to his past work and not work generally," which Reuter claims "is a strained interpretation of the record which the [Report and Recommendation] implicitly recognized" and "is not consistent with the record." *Id*. Reuter maintains that "[a]n off-task and a modest unscheduled absences restriction are consistent enough with the record as a whole that the ALJ should have . . . provided some explanation for why these limitations were not accounted for in the ALJ's RFC determination." *Id*. at 4.

In the decision, the ALJ addressed Dr. Cadaret's opinions as follows:

> Dr. Cadaret, [Reuter's] cardiologist, noted exertional dyspnea and chronic fatigue affect [Reuter], but she also described

---

[1] In the Report and Recommendation, Judge Roberts notes that "[t]here is no indication in the record regarding Mr. Johnson's level of training, education, certification, or experience." *Id*. at 17.

[Reuter's] prognosis as "good" (Exhibit 25F, page 1). Moreover, while she indicated he becomes fatigued with a full day's work, she also referred to the previously cited functional evaluation to explain that opinion, and that evaluation indicated [Reuter] retains the ability to perform sustained work that requires no more than 5.0 METs (Exhibit 25 F, page 2). This in turn indicates Dr. Cadaret meant to suggest [Reuter] could not perform a full day's work in the type of construction job he used to have   not all work in general. Lastly, Dr. Cadaret noted [Reuter] would be off task five percent of the workday and be absen[t] once per month (Exhibit 25F, page 4). Given the previously referenced implications of [Reuter's] functional capacity exam results and his daily activities, as well as the improvement in his heart function, the undersigned gives these opinions significant weight.

AR 55.  In the Report and Recommendation, Judge Roberts noted that:

Standing alone, it is apparent how one could think [that the ALJ's determination] is not related to the parts of the discussion referring to [Reuter's] past work.  However, Dr. Cadaret stated in her opinion that she could only comment on what was evaluated during the functional evaluation.  ([AR] 1282.)  Unlike functional evaluations done by consulting examiners for the SSA that are designed to see what jobs claimants are qualified to perform, this evaluation was designed to see if [Reuter] could return to his previous work. . . . [T]he focus of the evaluation was [Reuter's] fitness to work as a brick layer or road construction worker. Therefore, the limitations at issue referred to limitations [Reuter] would have while working in his previous occupations, not limitations he would have in any job. . . .

With Dr. Cadaret's caveat that her opinion was limited to what was evaluated in the functional evaluation, the ALJ's failure to include these limitations is supported by the record as a whole. More importantly, the ALJ referred to the "previously referenced implications of [Reuter's] functional capacity exam results and his daily activities, as well as the improvements in his heart function."  (AR [] 55.)  The ALJ discussed the

6

> functional evaluation and concluded that the evaluation along
> with other evidence in the record supported his conclusion.

Report and Recommendation at 11-13. Judge Roberts concluded that "Dr. Cadaret did not include a limitation in her opinion that [Reuter] would be off task five percent of the day and would miss one-day-a-month for all work." Report and Recommendation at 16. Alternatively, Judge Roberts determined that, "if Dr. Cadaret did include such a limitation, [the court] find[s] that the ALJ was justified in ignoring it because the limitation was not supported by substantial evidence on the record as a whole." *Id*.

Based on the foregoing, the court is unpersuaded by Reuter's argument, and finds that both the ALJ and Judge Roberts properly interpreted Dr. Cadaret's opinions and correctly determined that Dr. Cadaret's opinion regarding Reuter being off task five percent of the day and being absent from work one day per month related to his previous work not the work he could perform under the ALJ's RFC assessment. Further, the court finds that the ALJ's discussion of Dr. Cadaret's opinions included a proper explanation of his reasons for not including all of Dr. Cadaret's opinions in his RFC assessment for Reuter. Moreover, *Gann* is distinguishable from this case. First, unlike the instant issue, *Gann* addresses vocational testimony and a claimant's RFC. 864 F.3d at 952-53. Second, unlike *Gann*, as discussed above, the ALJ adequately addressed Dr. Cadaret's opinions as they relate to Reuter's RFC. Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court shall overrule this objection.

### B. James Johnson's Opinions

Reuter objects to Judge Roberts's finding that the ALJ's failure to assign a specific weight to James Johnson's medical source assessment was harmless error. *See generally* Objections at 4-5. Reuter requests that the court reverse the ALJ's decision and remand for a re-evaluation of Johnson's opinions.

Having reviewed the ALJ's decision, the court finds that the ALJ thoroughly considered Johnson's opinions and correctly relied on Johnson's opinions in determining Reuter's RFC. While the ALJ did not make a specific weight assessment of Johnson's opinions, the ALJ properly explained his consideration of Johnson's opinions, both generally and in the context of Reuter's RFC assessment and activities of daily living. *See* AR 51-52. Further, in the Report and Recommendation, Judge Roberts explained that:

> Th[e] ubiquitous use of Mr. Johnson's assessment to support [the ALJ's] decision can lead to no other conclusion but that the ALJ relied on the assessment to support his decision. The decision is well-written and "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. § 404.1527(f)(2). The ALJ discussed Mr. Johnson's assessment on AR 51-52 and explained why the assessment supported the RFC. After that, the ALJ referred to the assessment multiple times to support other conclusions. (AR 52-56.) The ALJ explained the significance of the tests to which he referred. (*Id*.) While a reader of Social Security disability decisions is used to seeing weights assigned to opinions, 20 C.F.R. § 404.1527(f)(2) makes it clear that assignment of a weight is not required when the opinion writer is not an acceptable medical source. The fault, if any, is merely in writing-style, not legal reasoning, and does not provide the basis for remand. *See Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011) ("[T]he ALJ's arguable deficiency in opinion-writing technique had no bearing on the outcome of [the] case and does not require remand.") (internal quotation omitted).

Report and Recommendation at 22-23 (third and fourth alterations in original).

In conclusion, the court finds no error in Judge Roberts's Report and Recommendation with regard to Johnson's opinions. Further, having reviewed the entire record, the court finds that the ALJ properly considered the opinion evidence provided by Johnson. Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the

8

record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court shall overrule this objection.

### C. *Appointments Clause Challenge*

Reuter objects to Judge Roberts's determination that the ALJ in this case was appointed in a constitutional manner. *See generally* Objections at 5-7. Specifically, Reuter argues that, "[c]oncerning the novel issue as to whether Ms. Berryhill, as an inferior officer, could constitutionally provide indefinite appointments to a large number of inferior officer agency ALJs, the Commissioner's briefing does not point to what section under the FVRA [("Federal Vacancies Reform Act")] [that] Ms. Berryhill exercised her authority to act as Commissioner." *Id*. at 5. In response, the Commissioner asserts that:

> [Judge Roberts] correctly concluded that [Reuter's] claim was heard and decided by a properly appointed ALJ. . . . The Acting Commissioner ratified the appointment of the SSA ALJs on July 16, 2018. At the time of the ratification, the office of the Commissioner of Social Security was vacant, and the Acting Commissioner, who was previously the Deputy Commissioner for Operations, was responsible for performing the duties and functions of the Commissioner pursuant to the Federal Vacancies Reform Act ("FVRA")[.] . . . The FVRA authorizes the President to direct a person to temporarily "perform the duties and functions of [a] vacant" Senate-confirmed position. *See* 5 U.S.C. § 3345(a). It expressly contemplates that, absent exceptions inapplicable here, the term "vacant office" may encompass the office of the agency head. . . . Thus, the designation of the then-Acting Commissioner under the FVRA permitted her to exercise the authority of the Office of the Commissioner.

Commissioner's Response at 2-3 (fourth alteration in original).

The FVRA, 5 U.S.C. § 3345, provides in pertinent part:

> (a) If an officer of an Executive agency . . . whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and

9

> duties of the office
> > (1) the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity. . . .;
> > (2) notwithstanding paragraph (1), the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity. . . .; or
> > (3) notwithstanding paragraph (1), the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity. . . .

*Id*. The court agrees with Judge Roberts that "a plain reading of the Act gave Acting Commissioner Berryhill the authority to appoint ALJs because that is one of the "functions and duties" of the office she was fulfilling in her capacity as Acting Commissioner of Social Security." Report and Recommendation at 27. Having considered Reuter's objection as to the ALJ's appointment, the court is unpersuaded by Reuter's argument that the ALJ in this case was not appointed in a constitutional manner. Accordingly, the court shall overrule this objection.

## *V. CONCLUSION*

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objections (docket no. 19) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 18) is **ADOPTED** and the final decision of the Commissioner is **AFFIRMED**; and

(3) The Complaint (docket no. 4) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**DATED** this 21st day of October, 2020.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

11